**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| C. L. J., a minor by his mother, ) | |
| RAYCHELLE MARBLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No. 1:15-cv-986-WTL-DML |
| ) | |
| CAROLYN W. COLVIN, Commissioner of ) | |
| the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff's mother, Raychelle Marbley, requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application on behalf of her minor son, C.L.J., for Supplemental Social Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). The Court, having reviewed the record and the briefs of the parties, now rules as follows.

### I.    PROCEDURAL HISTORY

Marbley filed an application for SSI on September 23, 2011, alleging that C.L.J. became disabled on April 1, 2011, due to mixed expressive and receptive language delays with bilateral ear dysfunction, failure to thrive/developmental delay, and borderline intellectual functioning. Her application was denied initially and upon reconsideration. Thereafter, she requested and was granted a hearing before an administrative law judge ("ALJ"). The hearing was held on July 10, 2013, before ALJ Mark C. Ziercher. At the hearing, C.L.J. was represented by Melissa Davidson, an attorney, and Marbley testified. On February 25, 2014, the ALJ rendered his decision in which he concluded that C.L.J. was not disabled as defined by the Act. The Appeals

Council upheld the ALJ's decision and denied the request for review. Subsequently, this action for judicial review ensued.

## II.  EVIDENCE OF RECORD

C.L.J. was born premature at 35 weeks on October 25, 2010. On August, 26, 2011, a multidisciplinary team determined that C.L.J. was eligible for services from First Steps because he was -2 standard deviations in gross motor function and -1.5 standard deviations in fine motor function. The team found that C.L.J. "display[ed] weakness in his abdominal muscles that are impacting his ability to sit with good posture, assume hands and knees and crawl." Record at 213. On September 9, 2011, C.L.J. was admitted to the hospital for poor weight gain and treated for failure to thrive. C.L.J. gained weight at the hospital and was discharged after two days. On September 30, 2011, C.L.J. was admitted to a Shadeland Family Care Center for an upper respiratory infection. At this visit, the nurse practitioner noted that C.L.J. had gained 12 ounces in the last three weeks. However, his weight remained at the 0 percentile and his height had dropped from the 13th to the 7th percentile. On October 25, 2011, C.L.J. was seen at Shadeland for a twelve month check-up. During this evaluation, the nurse practitioner noted that C.L.J. had gained 6.4 ounces in seven days.

On November 30, 2011, C.L.J. was administered a BAYLEY-III. The test indicated that C.L.J. likely had Mixed Receptive-Expressive Language Disorder, Borderline Intellectual Functioning, Gross Motor Delay, and a GAF of 50. The examiner opined that C.L.J.'s "language delay interferes with his ability to understand, remember and carry out simple directions." *Id.* at 353. The examiner also wrote that C.L.J. "is able to relate to others, non-verbally, on a superficial basis in a social setting." *Id.*

On December 27, 2011, C.L.J. underwent a consultative examination which noted delays in his articulation and expressive language as well as a severe delay in receptive language. The examiner expressed no concerns with C.L.J.'s hearing, voice, fluency, or oral-motor function. However, the report noted that C.L.J. only spoke one word: "dada." *Id.* at 381.

Three medical experts with the state's Disability Determination Services initially reviewed C.L.J.'s medical record between December 14, 2011, and January 13, 2012, and concluded his impairments did not medically or functionally equal any listing. These experts concluded that C.L.J. had a marked limitation in acquiring and using information and had less than marked limitations in attending and completing tasks, interacting and relating with others, moving and manipulating objects, caring for himself, and health and physical well-being. Subsequently, three other medical experts with the Disability Determination Services reviewed C.L.J.'s medical record between February 23, 2012, and February 26, 2012, and concluded again that his impairments did not medically or functionally equal any listing. During the second review, the medical experts opined that C.L.J. had no limitations regarding the attending and completing tasks and caring for himself domains.

On June 1, 2012, First Steps issued a progress report regarding C.L.J. The report stated that C.L.J. had made excellent progress, and he was able to sit well, maintain and play on his hands and knees, and stand briefly and walk with a push toy. The report also noted he had difficulty weight shifting to walk smoothly, was uncontrolled with one hand-held assist, and required moderate assistance to transition from floor to standing. Finally, the report indicated that C.L.J. remained in the 5th percentile for length.

On July 18, 2012, a First Steps team member assessed C.L.J. and determined he was still eligible for the program. The assessment indicated that he had -2 standard deviations scores in

fine motor, gross motor, adaptive, social communication, and social categories. The evaluation also noted that C.L.J.'s cognitive score was -1 standard deviation.

On March 4, 2013, C.L.J. underwent an audiology evaluation which revealed bilateral flat, middle ear dysfunction in both ears. The examiner found C.L.J.'s "[s]oundfield responses in the moderately-severe to moderate range in at least better ear, with possible conductive component." *Id.* at 439. The examiner noted that C.L.J.'s hearing might improve if it was due to the temporary middle ear dysfunction. However, if C.L.J. experienced "frequent or persistent middle ear fluid and infections, an Ear-Nose-Throat (ENT) physician may need to be consulted regarding possible treatment options, including pressure equalization (P.E.) tubes and antibiotics." *Id.* at 442.

On July 13, 2013, Marbley testified before ALJ Ziercher. At the hearing, Marbley reemphasized C.L.J.'s difficulties communicating and the recent problems with his hearing. Marbley also stated that C.L.J. now attends KinderCare. On August 8, 2013, a teacher at C.L.J.'s school, KinderCare, partially completed an assessment regarding his functioning. The questionnaire noted that C.L.J. did not speak, but concluded that all other domains seemed age appropriate. On September 3, 2013, C.L.J. had bilateral myringotomies with the insertion of ventilation tubes. His follow-up appointment was scheduled for a year later and is not a part of the record.

### III.     APPLICABLE STANDARD

To be eligible for SSI, a claimant must meet the requirements of 42 U.S.C. § 423. Pursuant to that statute, "disability" means the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §

423(d)(1)(A). The standard is a stringent one. The Act does not contemplate degrees of disability or allow for an award based on partial disability. *See Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985).

In determining whether a claimant under the age of eighteen is disabled, the Commissioner employs a three-step sequential analysis. 20 C.F.R. § 416.924(a). At step one, if the claimant is engaged in substantial gainful activity, he is not disabled, despite his medical condition. 20 C.F.R. § 416.924(b). At step two, if the claimant does not have a "severe" impairment or a combination of impairments that is "severe," he is not disabled. 20 C.F.R. § 416.924(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets, medically equals, or functionally equals any impairment that appears in the Listing of Impairments, codified at 20 C.F.R. pt. 404, subpt. P, App. 1. 20 C.F.R. § 416.924(d). If the claimant has an impairment or combination of impairments that meets, medically equals, or functionally equals the listings, and meets the twelve-month duration requirement, the claimant is deemed disabled. 20 C.F.R. § 416.906.

In determining whether an impairment functionally equals the listings, the ALJ must examine the following domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). The claimant's impairment or combination of impairments must result in "marked" limitations in two or more domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). A "marked" limitation is one that seriously interferes with the claimant's ability to sustain and complete activities. 20 C.F.R. § 416.926a(e)(2)(i). An "extreme"

limitation is one that very seriously interferes with the claimant's ability to sustain and complete activities. 20 C.F.R. § 416.924a(e)(3)(i).

On review, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). Rather, the ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

## IV.    THE ALJ'S DECISION

At step one, the ALJ found that C.L.J. had not engaged in substantial gainful activity since September 23, 2011, the application date. At step two, the ALJ concluded that C.L.J. had the following severe impairments: mixed expressive and receptive language delays with bilateral ear dysfunction; failure to thrive/developmental delay; and borderline intellectual functioning. At step three, the ALJ determined that C.L.J. did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled a listed impairment.

Accordingly, the ALJ concluded that C.L.J. was not disabled from September 23, 2011, through the date of his decision.

## V. DISCUSSION

Marbley first argues that the ALJ erred in failing to assess C.L.J. under Listing 100.05 for failure to thrive. While Marbley cites to medical evidence which suggests that C.L.J. might satisfy the criteria for Listing 100.05, as the Commissioner correctly notes, it was not adopted until April 13, 2015. Revised Listing for Growth Disorders and Weight Loss in Children, 80 Fed. Reg. 19522-01 (Apr. 13, 2015) (codified at 20 C.F.R. pt. 404, 416). In fact, the Listing did not take effect until June 12, 2015, over a year after the ALJ's decision on February 25, 2014. As a result, the ALJ did not err by failing to consider Listing 100.05.

Marbley also argues that the ALJ's determination is inadequate because he failed to have a medical expert consider the entire record. The Court agrees.

> Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue. *See* 20 C.F.R. § 404.1526(b) ("Medical equivalence must be based on medical findings. . . . We will also consider the medical opinion given by one or more medical or psychological consultants designated by the Commissioner in deciding medical equivalence."); S.S.R. 96–6P at 3 ("[L]ongstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight."), *reinstating* S.S.R. 83–19 (additional citation omitted).

*Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) (*cited in Minnick v. Colvin*, 775 F.3d 929, 935-36 (7th Cir. 2015)). In this case, the only medical consultants who opined on the issue of medical equivalence were the state agency doctors. All of them reviewed an incomplete record, however, as they did not have before them the July 2012 assessment by the First Steps team, which provides rather extensive additional information regarding C.L.J.'s condition, or the assessment by C.L.J.'s daycare provider, upon which the ALJ relied. Nor did they have before

7

them information regarding C.L.J.'s hearing problems, which were first discovered during an audiology evaluation on March 4, 2013.  Accordingly, remand is required to allow the ALJ to obtain an updated medical opinion on the issue of whether C.L.J.'s condition meets or equal a listing.

This error is compounded by the fact that, in finding C.L.J. less impaired than the medical experts did, the ALJ himself noted that the reviewing physicians and psychologists "did not see the full record received at the hearing level, in particular the KinderCare assessment, claimant's response to speech therapy, his subsequent tube implantation, and did not have the opportunity to discuss the impairments with the claimant's mother." Record at 16 (citations omitted).  If the medical experts did not have all of the information before them that the ALJ considered significant, obviously they were not able to make a proper determination regarding equivalency.  Further, the Court notes that the First Steps assessment appears to contradict the KinderCare assessment; accordingly, because the ALJ relied upon the KinderCare assessment, he should have explained why he credited one over the other.  *See* SSR 06-03p (setting forth how evidence from a non-medical source is to be considered).  This omission also should be corrected on remand.

## VI.  CONCLUSION

For the reasons set forth above, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further proceedings consistent with this Entry.

SO ORDERED: 8/26/16

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.